# EXHIBIT "A"

# EXHIBIT "A"

Electronically Filed
02/18/2011 10:17:05 AM

CLERK OF THE COURT

**COMP**
DAN R. WAITE (Nevada State Bar No. 4078)
DWaite@LRLaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

ERICK J. HAYNIE (Oregon State Bar No. 982482)
EHaynie@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: (702) 727-2000
Facsimile: (702) 727-2222
(*pro hac vice* application in progress)

*Attorneys for Plaintiff*

### DISTRICT COURT

### CLARK COUNTY, NEVADA

| | |
|---|---|
| PAGEANT HOLDINGS, LTD, a Bailiwick of Jersey (aka the Channel Islands) Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> QNECTIVE, INC; a Nevada corporation, <br><br> Defendant. | Case No. A-11-635468-B <br><br> Dept. No. XIII <br><br> **COMPLAINT** <br><br> **Automatic Exemption from Arbitration: Appointment of a Receiver** <br><br> **Business Court Requested: EDCR 1.61(a)(1) and 1.61(a)(2)(iii)** |

    Comes now Plaintiff, Pageant Holdings Ltd. ("Pageant"), to allege this Complaint against Qnective, Inc. ("Qnective"), as follows:

### PARTIES, JURISDICTION AND VENUE

    1.    Pageant is a corporation organized under the laws of the Bailiwick of Jersey (the Channel Islands).

    2.    Qnective is a corporation organized under the laws of the State of Nevada.

    3.    This Court has subject matter jurisdiction by virtue of its general jurisdiction and its jurisdiction over the parties.

4. Venue is proper in this action because Qnective is a Nevada corporation with its registered agent located within Clark County.

## FACTUAL BACKGROUND

### *Pageant is a shareholder of Qnective*

5. Qnective is engaged in the business of VoIP-based mobile communication solutions. Qnective was a public company traded on the OTC Bulletin Board from at least 2007 until it abruptly de-registered in December 2009.

6. Pageant is a shareholder of Qnective. Pageant purchased 11,175,101 shares of Qnective in the open U.S. securities market between June 2007 and March 2009. During this same period of time, Qnective was actively making public disclosures about its business. In addition, on or about January 7, 2011, Pageant entered into a Share Transfer Agreement with two existing shareholders of Qnective to acquire an aggregate of an additional 6,954,154 shares of Qnective stock. Collectively, as of February 17, 2011, Pageant has an economic interest in no less than 15,695,255 shares of Qnective stock, representing no less than 22% of the outstanding shares of Qnective.

### *Qnective Tender Offer, Plan of Exchange and Dissolution*

7. On or about January 20, 2011, Pageant received from Qnective a tender offer dated January 13, 2011. The tender offer included a proposed form of Redemption and Exchange Agreement (the "Exchange Agreement"). The tender offer states that Qnective has taken action to transfer all of Qnective's assets to a private Swiss company, called Qnective AG ("AG"). In addition, the offer states that all non-U.S. shareholders may tender their shares of Qnective for redemption by Qnective and exchange for AG shares. The offer specified no time by which the shareholder was to respond. The offer further states that upon completion of the redemption and exchange, Qnective would be liquidated and the remaining shares would be distributed to the remaining (presumably U.S.) shareholders. In addition, Qnective would be dissolved.

8. Qnective's tender offer and plan of exchange, if enforceable, would have the result of forcing Pageant (and all similarly situated shareholders) to exchange its shares of Qnective for shares of AG.

9.  Neither the tender offer, nor any document accompanying the offer, informed Pageant of what its rights would be as a shareholder of AG following the exchange, whether it would have the same ownership percentage in AG, or any other information about AG.

10. In addition, the proposed Exchange Agreement, among other things, required Pageant to agree that the officers and directors of Qnective do not owe any fiduciary duties to Pageant.

11. In response to the tender offer and plan of exchange, Pageant responded with a letter on January 24, 2011 requesting more information, including information about its rights as a shareholder, the conditions to the tender offer, and the timing of the proposed transaction.

12. Finally, by letter dated February 14, 2011, and after repeated requests from Pageant, Qnective provided limited additional information. Although Qnective told Pageant verbally on or about January 26, 2011 that the timing of the dissolution was not definite, Pageant learned for the first time through the February 14, 2011 letter that the dissolution was to be effective on February 18, 2008—only four days after Qnective provided initial disclosures to Pageant.

13. Pageant later discovered on February 15, 2011 that Qnective filed a certificate of dissolution with the Nevada Secretary of State's office on February 7, 2011, at which time Qnective was actively delaying disclosure to Pageant of requested information.

14. Qnective also failed to disclose various other material information to Pageant about the proposed plan of exchange, including (without limitation) what ownership percentage Pageant would have after the redemption and exchange. Qnective did disclose that Pageant's shares in Qnective would no longer be freely transferable and tradable as shares of AG, requiring the prior approval of AG to transfer. This significantly devalues Pageant's Qnective shares and severely limits Pageant's ability to sell the shares. In addition, the Articles of Association of AG provide for the issuance of 28,190,621 AG shares to "persons contractually related" to AG; referenced as "servicing persons" in the Articles. This represents approximately 40% of the outstanding shares of Qnective.

15. Upon information and belief, AG is a Swiss corporation with few contacts to the United States. On information and belief, the shares Qnective intends to distribute to shareholders under this plan are not, and will not be, registered with the U.S. Securities and Exchange Commission.

16. On information and belief, Qnective and its management group has initiated its plan of redemption, exchange and dissolution for the improper purpose of attempting to remove Qnective and its management group from the reach of the securities laws of the United States and the State of Nevada, and thereby deprive Pageant and similarly situated shareholders of the protections afforded by those laws.

17. On information and belief, Qnective may have failed to follow the requisite corporate formalities to implement some or all of its contemplated plan of redemption, exchange and dissolution.

18. Under Nevada law, including without limitation NRS 78.590, upon the effective dissolution Qnective, the directors of Qnective would become the trustees of the corporate estate and would be personally liable for any improper distributions or transfers of corporate assets made without first paying or adequately providing for the payment of Qnective's liabilities and obligations.

### FIRST CLAIM FOR RELIEF
(Claim re Dissenter's Rights)

19. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth above.

20. Qnective is a "domestic corporation" within the meaning of NRS 92A.025. Pageant is a "stockholder" of Qnective within the meaning of NRS 92A.325.

21. Under Section NRS 92A.380, a stockholder of a domestic corporation is entitled to dissent from, and obtain payment of the fair value of the shareholder's shares upon the occurrence of certain events, including without limitation an event in which the corporation consummates a plan of exchange without the approval of the shareholder.

22. The plan of redemption and exchange offered by Qnective, pursuant to which shares of Qnective are to be exchanged for shares of AG, constitutes a plan of exchange within the meaning of 92A.380(1)(c) or is otherwise in violation of one or more provisions of NRS 92A.380(1)(a)-(f). Consequently, Pageant is entitled to exercise dissenter's rights and demand payment of the fair value of its shares.

23. The fair value of Pageant's shares in Qnective, if determined by the formula set forth in NRS 92A.320, would be no less than $6,500,000 and such exact amount that Pageant may prove at trial.

24. Pursuant to NRS 92A.500, Pageant is entitled to an award of its costs, disbursements and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
(Claim for Appointment of Receiver)

25. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth above.

26. NRS 78.600 provides that, when any domestic corporation is dissolved or ceases to exist in any manner whatsoever, the district court, upon application of any creditor or stockholder of the corporation at any time, may appoint a receiver of and for the corporation, to take full charge of the corporate estate and to perform all acts that may be necessary for the proper settlement of the unfinished business of the corporation.

27. Pursuant to certain articles of dissolution filed by Qnective management on or about February 7, 2011, Qnective purports to be dissolved, effective February 18, 2011.

28. Under these circumstances, it is just and appropriate for this Court to appoint a receiver to take full charge over any wind down of Qnective's business and affairs. If it were to proceed, the contemplated plan of redemption, exchange and dissolution would create a substantial risk of material injury or impairment to both Qnective's assets and the legal rights of Pageant and similarly situated shareholders. This is the case for numerous reasons. By way of example, the contemplated plan of redemption, exchange and dissolution would effectively shift management and control over Qnective assets to an offshore Swiss entity that is not regulated by the United

States Securities and Exchange Commission and which the Qnective and AG management group may contend is beyond the jurisdictional control of the State of Nevada. This would greatly complicate the ability of shareholders aggrieved by an improper distribution of assets to obtain a proper remedy. In addition, on information and belief, the contemplated plan of redemption, exchange and dissolution would unfairly and inappropriately advantage the equity position of various members of the Qnective and AG control group, including Oswald Ortiz (CEO and President) and Paul Barry (Director), at the expense of Pageant and similarly situated shareholders. The appointment of a Nevada receiver would help assure a just and orderly liquidation of Qnective assets in accordance with Nevada law.

## RESERVED CLAIMS

29.     Pageant reserves the right to assert additional claims in this matter following discovery, including without limitation the following: (i) claims against Qnective and/or its management relating to or arising from insufficient disclosures or other improper conduct in connection with the issuance of a tender offer, including without limitation such claims arising under Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14e-1 and Rule 14e-2; (ii) claims against Qnective and/or its management for tortious interference with Pageant's contractual rights as a shareholder of Qnective, including without limitation claims arising from the inability of any Qnective shareholder to sell or assign shares of AG; (iii) claims arising under of Section 10(b)(5) of the Exchange Act and SEC Rule 10b-5 based on acts of fraud on the market by Qnective and/or its management in connection with Pageant's purchase and/or sale of Qnective securities; and (iv) claims against Qnective and/or its management arising under the state securities laws of the State of Nevada.

30.     In addition, Pageant reserves the right to add directors and officers of Qnective to this Complaint and assert additional claims in this matter against them following discovery, including without limitation claims for breaches of fiduciary duties, and reserves the right to add AG for violations of the registration requirements under the U.S. securities laws.

////

////

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(1) Judgment against Defendant in an amount in excess of $10,000 and in such exact amount as is proven at trial;

(2) Reasonable prejudgment and post judgment interest until the judgment is paid;

(3) For an order appointing a Receiver to manage and supervise any dissolution of Qnective;

(4) Plaintiff's reasonable attorney fees, costs and disbursements incurred herein.

(5) For such other relief as the Court determines is just and appropriate.

DATED: February 17th, 2011

**LEWIS AND ROCA LLP**

By: /s/ Dan R. Waite
Dan R. Waite, Esq.
dwaite@lrlaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: 702.949.8200
Facsimile: 702.216.6177

Erick J. Haynie, Esq.
EHaynie@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: (702) 727-2000
Facsimile: (702) 727-2222
(*pro hac vice* application in progress)

Attorneys for Plaintiff